Thank you, Your Honors. It's my privilege to appear before this Honorable Court and represent Mr. Doyon and MDI in connection with this matter. I'd note for the Court that Mr. Doyon is present here today. This case involves two different members of one organization, the Midwest Disability Initiative. The two members are a Mr. Testa and a Mr. Doyon. Both Mr. Testa and Mr. Doyon are severely disabled individuals. Mr. Testa encountered unlawful discriminatory physical barriers when he attempted... What he considered unlawful barriers. Yes, he alleged that. They are fairly objective, these requirements, but in any event, you're correct. He alleged that he was subject to unlawful discriminatory barriers at the defendant's facility. He commenced an action seeking to... Civil litigation, guilt is not presumed. Yes, exactly. He alleged in his case that these unlawful barriers existed and he sought initially, when he filed his action, an order requiring that the barriers be remediated. Mr. Testa later decided that he no longer was interested in pursuing that particular piece of litigation and in fact, he decided he was no longer interested in being a member of MDI. As a result, Mr. Testa's claim against this particular facility, Nikos Tacos, was dismissed. What about the organization's claim? Was dismissed as well. Left that out. I did not do that intentionally, Your Honor. You are correct. Well, it seems to be the whole case, so you better focus on the relevance of MDI's claim, I think. All right. Eventually, you can proceed however you want, but I just wanted to be clear. I appreciate that. Both claims were dismissed. I appreciate that, Your Honor. Is that right? Yes, and they were dismissed pursuant to stipulation with prejudice, both claims. Got it. So later, approximately six months later, Mr. Doyen is also subjected to what he alleges to be unlawful discriminatory physical barriers at the same premises, Nikos Tacos. Mr. Doyen alleges some of the same contentions that Mr. Testa did, but alleges some additional claims as well. Mr. Doyen and MDI then commence this second action seeking to redress the separate instance of discrimination that Mr. Doyen suffered some six months after Mr. Testa alleges that he suffered his. The district court decided that the second action Mr. Testa, rather the second action brought by Mr. Doyen and MDI was barred under the principles of res judicata by the first action that was brought by Mr. Testa and MDI and that was ultimately dismissed with prejudice for both parties because Mr. Testa decided he was no longer interested in pursuing it. And so that's the discrete issue here before this court. Is that judgment correct that the principles of res judicata barred this second action? Let me just make sure I understand the parameters of your position. As I understand the position, if Mr. Doyen completed his case on the merits, got some remedy or didn't, the next day a third member of MDI could bring a claim against Nikos alleging additional barriers that could have been but were not pursued under Steger by Mr. Doyen. I believe that's a correct interpretation of the law, Your Honor. Your position. Yes. The hope would be that the... There's nothing in the law that would bear that out, certainly not in this circuit. Well, I mean, perhaps I misunderstood. I wanted to clarify that that is the expansive, the dramatically expansive position you're espousing. Well, not in this case. Another member of MDI can always come in and find a new barrier even against a fully litigated defendant. Well, if it's a new and distinct barrier and if it's a new and distinct instance of discrimination and if it violates federal law, absolutely. There is no pre-pass for businesses who are... Wait a minute. There is under the law of res judicata claims that could have been asserted are within the scope of... That's correct, Your Honor, but if... Now you're saying your position here because you can find another member is free of that restriction. I don't think I'm saying that. What I'm saying, judges, I think we're... I'm getting my wires crossed a little bit, but what I'm contemplating is a separate instance of discrimination involving a separate party on a separate date, and the facts here are separate violations. Here MDI could not... Rather than dismiss its claim in the testis suit... Yes. It could have come in with Mr. Doyen or another... Well, it wasn't a class action, but there could have been... Another member could have filed a complaint and attempted to join it to MDI's undismissed claim. I don't think so. Or you could have proceeded the way you did and have Mr. Doyen sue only for the unasserted barriers and conceded that the barriers at issue in the testis case were resolved. I don't think another member could have just stepped in for Mr. Testa, Your Honor, because that other member would have... MDI has been a plaintiff right along. It's a plaintiff here and it was a plaintiff... But MDI is only there if they have associational standing, and they'd have to have another member that was subjected to the same discrimination in that first testis suit. They did not, Your Honor, until six months later when another member was subjected to discrimination. So I don't think it's accurate to describe our position, at least, that instead of dismissed testis claim, they could have just gotten another guy there. I don't think that's possible factually, and I would find that somewhat distasteful in any event. But the facts here certainly don't involve that contention. The facts here are that another completely distinct individual, six months down the road, this business hasn't done anything, they encountered the discrimination, they're seeking to remedy some of the same issues and some new issues. And the principles that the U.S. Supreme Court tells us we need to apply are set forth in this Taylor v. Sturgill case. And so we know what we need precisely to look at here. And, of course, the general rule espoused in Taylor v. Sturgill is that one is not bound by a judgment in personam in litigation in which he is not a designated party or to which he has not been made a party by service of process. Sturgill goes on to tell us, though, that a party's representation of a non-party is adequate for purposes of the race judicata analysis if the interests of the non-party and her representative are aligned and either the party understood itself to be acting in a representative capacity or the original court took care to protect the interests of the non-party. Do you agree that the interests are aligned here? And that's the first argument, is that certainly, Your Honor, an argument could be made that when Mr. Testa initially set out to correct what he contended was clear unlawful discrimination, his interests would have been precisely aligned with Mr. Doyon. There's one caveat. He didn't have all of the same claims that Mr. Doyon did. But certainly the interests were, in an honest way of looking, things aligned. They both wanted this property to come into compliance with the ADA. Why are you talking about Testa? I mean, the district court didn't say Testa was in privity with Doyon. The district court said the organization was in privity with Doyon. The organization only has a voice through associational standing, and that's Testa. So I think Testa's facts and circumstances are relevant to the court's consideration. The district court didn't, and frankly neither do I. All right. I mean, sure you have, I know what associational standing requires, but that doesn't mean that that's your view. All right. Let me suggest this. The argument can be made whether or not you want to focus on MDI or Mr. Testa. Both Mr. Testa and MDI in the first case decided to throw in the towel. So whether you want to focus on Mr. Testa or not, the fact of the matter is that those, and getting to Your Honor's question, after the decision was made to throw in the towel, their interests were not aligned with Mr. Doyon's. They were diametrically opposed at that time. Mr. Doyon wishes to require this premises to come into compliance with the ADA through litigation, neither MDI. Give me your best federal appellate decision for this way to measure alignment. I would refer you to the cases cited on pages 19 of my brief, Your Honor. There's a couple there, and then there's some additional cases on pages 21, 22 that articulate the, put some meat on the bones, if you will, on this first Taylor Sturgill prong. Are you saying that when Testa opted to dismiss his claims, you think the association lost standing? Absolutely, without question. The association is only, a party only has a role in that case through associational standing. If the member no longer has any individual basis for standing, the organization does not. So your position legally is that MDI would never have associational standing for any member other than the one who was a plaintiff, a co-plaintiff in the action? My position, Your Honor, is that MDI will never have associational standing unless they have a member that was subject to the specific discrimination. I said co-plaintiff. Well, standing as a co-plaintiff, exactly. We can put into F-3rd where your position is MDI never has associational standing unless there's a member who is a co-plaintiff in the action. No, it wouldn't have to be a co-plaintiff. It could be a co-member, but they have to be subject. Then Testa's dismissal doesn't destroy your standing, which was your assertion. It does if they didn't have another individual who could stand in his place and there's nothing in the record indicating they did. You're saying a plaintiff with associational standing has to have a member co-plaintiff? Not as a co-plaintiff. They have to have a member, though, Your Honor, that can establish standing, and once Testa decided he didn't want to participate, they did not have that member. There is no question in my mind that this case— You make that assertion. It's under the— It's contrary to what was argued in Steger, for sure. Well, Steger, I don't think, was erased due to Cotta case. It had to do with whether or not you could— Well, it was, but I was there, you know. That's why I'm— Okay. It was my frame of reference. Anyway, here's my concern, is that, for example, you've got—let's say I'm a member of the NRA, and I don't know Charlie, who's another member of the NRA, or call it the Sierra Club. But Charlie has brought this case with the NRA, and it's a vital right-to-bear-arms case, okay? And I'm very interested in that issue personally. But then Charlie decides that he doesn't want to pursue that case anymore.  They filed it. Then they decided to dismiss it. NRA, since they were a party on the case, participated in the dismissal and was subject to dismissal. I never knew Charlie. I never knew that he brought this case. I had no idea about it. Well, did you have a claim at that time? No. Well, let's assume I didn't, like Mr. Doyen didn't here. Let's assume I didn't. But later, I have a run-in with law or something about that, and I do have the same right-to-bear-arms claim. And I say, I want to do this now. Is the race-judicata principle so broad that it would say no? When Charlie and the NRA dismissed their claim, they were flushing your rights away at the same time, so you're out of luck. And I say, well, wait a second. How does that work? And the same could be true from the other end of the political spectrum, the Sierra Club. If the Sierra Club brings a clean, one of their members brings a clean water citizen suit on the North Shore, where I go a lot, they start a suit because this company is putting too much mercury into the stream in violation of their permit. Later, Joe Blow, who I've never met before, decides he doesn't want to do it anymore. So the Sierra Club and Joe Blow dismiss their suit. I come along, find out about this. It's in a stream that I canoe in. I want to do a citizen suit. But because I'm a member of the Sierra Club, I'm barred? That's what this holding, that's why we're here, because of the breadth of this holding and what it does to members who had no idea about a first claim that their organization and some member they had never met was doing about the ability of that organization and that member to impact and, in fact, eviscerate and eliminate other members' subsequent arising rights to proceed under a similar legal theory. That's exactly what the court held here, and we think it's too broad. It wasn't a subsequent arising of rights.  Mr. Doyen did not have any rights until he attempted to patronize that building, Your Honor, six months later. It was a subsequent arising right. It did not exist. All right, your time is up. Thank you. I appreciate it. I appreciate it, Your Honor. I can tell you could go all day on this. Yeah, I could. I appreciate it. All right. Mr. Frazier. May it please the Court. Paul Testa was a party to the first lawsuit, and he was there to represent himself. MDI was also a party to the first lawsuit, and Paul Testa did not need an organization to represent his interests. MDI was there to represent the interests of a larger group, specifically its members. This appeal presents two questions. First, whether MDI adequately represented the interests of its members when it decided to sue Nikos Taco Bar in April of 2017. And secondly, whether this lawsuit, where MDI seeks to have every architectural barrier present at Nikos Taco Bar removed, asserts the same claims as the lawsuit it brought in April of 2017, seeking the same remedy. As to your first issue, your first point, how was this adequate representation? What did the district court find that concluded that, all right, so they're members of the same association or organization? There has to be more than that, right? Yes, Your Honor. Under Taylor v. Sturgill, the adequate representation exception to the party preclusion rule has two elements. And so what did the district court find? What is here to show the adequate representation? Absolutely. So the two elements, the first is that their interests are aligned. And it's the interests in the lawsuit. The trial court correctly found that Mr. Doyen's interests in this lawsuit are to remove architectural barriers at Nikos, and not merely architectural barriers, architectural barriers that affect his particular disability. He's mobility disabled. And even more specifically, architectural barriers present in the parking lot, in the accessible route, at the accessible entrance, and in the accessible bathroom. That was his interest in this lawsuit. And it looked at the interests in the prior lawsuit, where MDI sought removal of architectural barriers at Nikos, and not merely architectural barriers, but affecting a person with a mobility disability present in the parking lot, in the accessible route, in the accessible entrance, and in the bathroom. So the court concluded that their interests in the lawsuit were aligned. Let's focus on the next part, the representative capacity, because I'm just trying to figure out what kind of finding needs to be made by the district court that this was adequate to then preclude someone else from bringing suit. The second element is whether the representative in the first case either understood itself to be acting in a representative capacity, or whether the court took pains to ensure the protection of non-parties. And the MDI certainly understood itself to be acting in a representational capacity. That is what associational standing is. MDI could not have sued Nikos Taco Bar to represent itself. It could have brought suit on its own, though, correct? Just as MDI, so long as it met the associational standing requirements. Exactly. It could have brought suit without a co-plaintiff at all, so long as at least one of its members would otherwise have had standing. And that is part of the associational standing analysis. But what about the fact that if TESTA, well, you're saying could they have proceeded even without TESTA? My understanding of the most recent cases on associational standing in this circuit within the last year are that the organization has associational standing if it has members who otherwise would have standing. Right. So he would not have needed to be a co-plaintiff. No, but suppose TESTA, I thought there was a suggestion today that he withdrew from the organization. Now, at that point, MDI couldn't have proceeded unless it had some other member who had standing. That's correct, Your Honor. If MDI didn't have any members who had standing, then it could not have proceeded. So why should Doyin be precluded if MDI couldn't litigate the case to the finish when TESTA withdrew? MDI could have taken remedial actions within that case to secure its standing, and it didn't do so, Your Honor. Doyin was represented at the time. And the question isn't whether another member had suffered an injury. It's whether another member could have had standing. And Doyin was a member of MDI and was impacted in the same way by the bearers. Well, no, I think if Doyin had tried to sue on his own, then wouldn't we say he lacked standing because he'd never been to the restaurant? You can't just, I'm pretty sure we would say. Don't you think the law is that if somebody just hears about your restaurant, that you don't have appropriate parking or whatever, they can't file a lawsuit unless they've actually gone there and been injured? Absolutely, Your Honor. That was Steger. Right. That was four-fifths of Steger that no one ever talks about. So you say, well, so that suggests that the organization couldn't proceed once TESTA withdrew if Doyin had never been to the restaurant, or nobody else in the organization had been to the restaurant. You're right, Your Honor. And there is no evidence at the trial court. So if that's true, then why should Doyin be precluded if MDI wasn't in a position to litigate the case? Your Honor, there is no evidence, there's no allegations at the trial court level of whether and when Paul TESTA stopped being a member of MDI. The case was not dismissed based on a standing issue. There is no basis for the trial court to admit that. Well, I did wonder if MDI ended up lacking standing, why it would be dismissal with prejudice. It was stipulated to dismissal with prejudice. Yeah. But, I mean, that would be one way maybe to avoid, I don't know, I have to think through whether that would avoid preclusion. But suppose MDI had been dismissed without prejudice for lack of standing. Then, Your Honor, I don't think- Do you think there would be preclusion then? I do not. Because that's one of the requirements of claim preclusion? Correct. A final judgment on the merits, and a dismissal without prejudice would not have been that. And certainly a dismissal on standing grounds I don't believe would have been a final judgment on the merits. Right. So MDI stipulated due dismissal with prejudice, meaning judgment on the merits. Yeah, the stipulation specifically said on the merits as well. It did, okay. So the court looked to see, to go back and answer your question, the court looked to see whether MDI was holding itself out to be a representative. And so it looked at how MDI got there in the first place, that it only could be a party to the case as a representative of a broader class. Not only that, it also looked to the fact that MDI and Doyon are co-plaintiffs in this case. MDI and Doyon were co-plaintiffs in at least, I believe it was eight or nine other cases in this circuit,  So the public record demonstrates that they were parties, or that they were co-plaintiffs, and that Doyon was a member of MDI when MDI filed its first lawsuit. Not just any type of lawsuit, they were lawsuits regarding architectural barriers and businesses seeking the same type of remedies, represented by the same attorney. And so the court looked at those facts and said, MDI must have been acting in a representational capacity representing at least its members, and Doyon was a member at the time the first lawsuit was filed, and so he was adequately represented by MDI for purposes of race judicata. Now that's consistent with the case law in the Eighth Circuit. For example, in the Yankton Sioux tribe matter, in the first lawsuit, the tribe brought a lawsuit against the U.S. Department of Health and Human Services for its attempted closure of an emergency room. It had some named members in the first lawsuit as well, and one obtained a permanent injunction that prevented the department from closing any emergency rooms until certain conditions were met. The department met those conditions and successfully petitioned to have the injunction removed. After it was removed, the department scheduled subsequent closure dates, and the tribe and different members sued the department a second time. And the court said these claims are precluded because the tribe was there as a representative of all its members, not just those that were named, and that the members in the second lawsuit were members in the first lawsuit. So in this case, going back to the analysis here, you're not suggesting that the original court took care to protect the interests of the non-party. Your argument is that MDI understood itself to be acting in the representative capacity, correct? Correct. So in sum, really what you're relying on is what they put in the complaint. Yes. So there's nothing else about this litigation that you can point us to that suggests or shows that there was sort of a vigorous defense of the case or prosecution of the case on behalf of the group. Correct. It's what's in the complaint, which indicates that MDI had suffered no direct injury and that at least one of its members had suffered a direct injury and had standing, but that MDI was there specifically aligned with its purpose of blazing a trail and making a path by holding businesses accountable for violations of the ADA. Because Testa could bring this case himself. Correct. But on his own, and so it's sort of a negative inference. The only reason, there's no other reason for you to be there is what you're saying, and so that is sufficient for purposes of the privity in your view. Correct. There's no other reason and there's no other means by which MDI could be there under the facts alleged in the first complaint. It did not have a direct claim, so it couldn't be there to represent itself, and it didn't need to be there to represent Testa because he was a party. So it must have been representing a broader class. In addition to the allegations that it makes seeking discovery of all barriers, not even those that specifically relate to Mr. Testa's disability, and removal of all such barriers, not just those that would relate to Mr. Testa's disability. So you think if you have barriers there, for someone to sue would have to be a person who has standing and is not a member of MDI. That person could bring a suit against you and would not be precluded. Certainly that person would be able to bring a suit and would not be precluded. Yeah. If there were evidence or allegations that a barrier were imposed subsequent to this lawsuit, that could change the analysis. So if Nico's Taco Bar decided to do a renovation, for example, and there were allegations that this renovation could not have been brought in the first case. How about the same barrier with a different limitation because the second plaintiff has a different disability? Then it would, Your Honor, as I understand Steger and its progeny, the question would go back to what was the scope of MDI's standing in the first lawsuit? Because Reis Judicata bars claims that could have been brought, and MDI could have brought claims representing the disabilities of any of its members. So if it had, for example, a member who was blind, my understanding is MDI would have standing to. Even though no blind member had ever tried to go to the restaurant? I'm not entirely sure on whether that is the status quo. I think that is the extreme end of the law here. So if MDI did not have any blind members, regardless of the outcome of the first case, an individual who was blind would absolutely not be precluded in the subsequent lawsuit. Or if that individual joined MDI. No, I'm saying suppose they had a blind member, but the blind member had never gone to the restaurant. You seem to say MDI would have standing to litigate something at NECO that discriminated against blind persons, even though Testa was not blind. Your Honor, I think it's the law. I think that's arguably the law. I'm not sure the status of the breadth of associational standing. I understand there are certain limits of what was encountered. For example, if a person never entered the building, then they might not have standing to proceed for lawsuits inside. But a significant complexity, it seems to me, is that the merits of the lawsuit will turn on the feasibility and reasonableness of the remedy for a particular barrier. And the remedy may well change, depending upon the way the barrier is impacting a person with a particular disability. So how can, you know, the first person who needs a wheelchair may be perfectly satisfied if the thing is lowered, and the blind person says, wait a minute, it hasn't got Braille on it. I still can't use the restroom. You're right, Your Honor, and I see I'm running out of time. The hypothetical here I think is a very interesting one, but luckily it's not one that we need to answer because both individuals here suffer from the same type of disability. And so there is no dispute that MDI could have, and in fact did, assert the same categories of claims and the same types of claims seeking the exact same remedies, removal of barriers in the parking lot, the accessible ramp, the accessible route, and the bathroom that would affect a person in a wheelchair. And so because both individuals that created the standing for MDI in the first place and those barriers that MDI alleged are the same, we don't have to answer the question of what would happen if Mr. Doran were blind instead of in a wheelchair. My time is up. I thank you for your consideration. Mr. McInfeller, I cut you off, so I'll give you a minute and a half for rebuttal if you'd like. I appreciate it. I'll try to do it in a minute. I just want to say very briefly, Your Honors, that there is a case on Page 4 of our materials that sets forth the requirements for associational standing, Hunt v. Washington State, that does say that an association does not have standing unless its members would otherwise have standing to sue in their own right, among other factors. Why was the MDI's claim dismissed on the merits? Through stipulation. But, I mean, why doesn't that mean that you litigated the merits and you weren't out for lack of standing? I think what I'm suggesting is that because MDI did not have another member who could establish in his own right standing, MDI did not have associational standing to proceed after Mr. Testa decided he didn't want to do it, so they didn't have much choice than to dismiss. Well, why didn't they have the option to say, Judge, we move to dismiss our claims without prejudice because we now lack standing, and then you would avoid a preclusion problem? That's a fair point. But you stipulated to the merits. Yes, I did. And so why aren't you stuck with preclusion? Well, I think I'm not stuck with it because of the Sturgill factors. And counsel says that res judicata applies to claims that have or could have been brought, and that's true in a general sense, but not if they don't pass the muster of Sturgill and those three prongs. Then res judicata doesn't apply. And I just can't see that someone who throws in the towel adequately represented somebody who wants to vigorously pursue it. And then the claims do have to be the same. Your parade of horribles problem, though, seems to be solved, isn't it, if you could have dismissed without prejudice? I think that's true. And the problem here isn't that the law is bad, it's that you made a tactical decision for whatever reason to go out on the merits. I appreciate it, and I think if the tactical decision would have been made correctly in that regard, we wouldn't be here. But I think in spite of that, application of these principles clearly demonstrates that this hypothetical NRA member I mentioned is not barred under these circumstances. Okay. Lastly, they do have to be the same claims. These were different in time and different in the nature of the claims. I thank you all very much for your consideration of this. Thank you, Counsel. The case has been well briefed and actively argued and will argue. No, by both of you. And we appreciate that because that's what we're here for. Thank you. And we'll take it under advisement. Great. Thank you very much. Does that complete the argued cases? It does. Very good. The court will be in recess until 9 o'clock tomorrow.